

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00028-CV

MICHAEL D. JACKSON, JR., Appellant

V.

DIAMOND D REALTY, ANDY GRIFFITH, AND DENISE BADGLEY, Appellees

On Appeal from the 294th District Court
Van Zandt County, Texas
Trial Court No. 17-00276

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

Michael D. Jackson, Jr., sued Diamond D Realty, Andy Griffith, and Denise Badgley (collectively Appellees) for breach of contract, statutory fraud, and common-law fraud involving the sale of Jackson's residential property located at 301 Van Zandt County Road 1906, Fruitvale, Texas 75127 (the Property). The gravamen of Jackson's complaint alleged that Appellees' actions caused a delay in the sale of the Property. Noting that Jackson filed his lawsuit one month after he signed the final contract of sale for the Property, Appellees filed a traditional and no-evidence motion for summary judgment arguing that the "evidence on record in fact establishe[d] the opposite of [Jackson's] claims." The trial court granted Appellees' motion for summary judgment, dismissed Jackson's claims, and entered a take-nothing judgment against Jackson.

On appeal, Jackson argues that the trial court erred by granting summary judgment against him. Because we find that the trial court's summary judgment was proper, we affirm its judgment.[1]

I.    **Factual Background**

An understanding of Jackson's allegations in this case is required to grasp the merits of the summary judgment motion. Jackson's petition stated that he hired Appellees to sell the Property and that, during their representation, Appellees engaged in the following conduct:

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

- Utilized the property to hunt and fish

- Discharged firearms on the property, sometimes as late as 10 p.m.

- Utilized the property to go four wheeling with . . . friends

- Disturbed the cattle on the property

- Showed the property to parties who [they] knew were not credit-worthy buyers

- Took over negotiations with the potential buyer of another realtor who had the right to sell the property

- Left off 6 acres from the listing

- Did not use Plaintiff's survey when originally listing the property, despite specific instructions from the Plaintiff

- Picked up the only copy of the survey with permission to copy it, but never returned the copy of the survey despite instructions to do so

- Did not disclose to Plaintiff or Plaintiff's other realtor that a purchase offer for the property was contingent on the sale of a neighboring property

- Placed hunting blinds and game feeders into the contract despite Plaintiff not owning them

- Requir[ed] only $200 earnest money for a $430,000 transaction

- Refused to put into the contract that the person with a cattle lease had 30 days to remove the cattle and other belongings

- Did not put interest in the contract for owner financing

- Placed in the contract that Plaintiff would pay for a new survey despite Plaintiff not wanting that clause

- Took personal property from a neighboring property, including a refrigerator

- Refused to put a clause in the contract clarifying that Plaintiff's deadline for removing his items from the property post-sale was contingent on weather permitting

- Put into the contract that Plaintiff would pay for mineral rights research without Plaintiff's consent

- Refused to mention squatter[']s rights in the contract

- Refused to mention the sewer line on the property in the contract

- Trespassed on the property after signage was put up disallowing Defendants on the property

- Refused to terminate the contract or give up a commission despite all of the above

Jackson stated that "[a]ll of the above caused significant delay in closing on the property with a legitimate buyer and cost[] Plaintiff significant funds in mortgage payments and other expenses that he would not have incurred had Defendants acted promptly."

As for his breach of contract action, Jackson alleged that Appellees

breached the contract by performing the [bulleted] acts and omissions . . . . [which] show[ed] an intention to use the [P]roperty for personal use rather than using commercially prompt and reasonable methods to sell the [P]roperty and a disregard for protecting Plaintiff's rights in contractual language with the potential buyers.

Jackson alleged that he was damaged "in the costs of the upkeep of the property while the sale was delayed because of the breaches."

As for his statutory-fraud cause of action, Jackson alleged that Appellees "made false representations of past and existing material facts for the purpose of inducing the Plaintiff into a real estate contract and such false representations were relied on by the Plaintiff." For his common-law-fraud action, Jackson said that Appellees' "acts and omissions constituted common

4

law fraud in that the [Appellees] represented to Plaintiff that they would act as professional real estate agents in selling Plaintiff's property when in fact the intention was to delay any sale so that Defendants could make personal use of the property."

After conducting discovery, Appellees filed a traditional and no-evidence summary judgment motion.

## II. Standard of Review

"We review a summary judgment de novo." *Douglas v. Hardy*, 600 S.W.3d 358, 365 (Tex. App.—Tyler 2019, no pet.) (citing *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). "When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Pryor v. Moore*, No. 12-20-00137-CV, 2021 WL 1582722, at *2 (Tex. App.—Tyler Apr. 21, 2021, no pet.) (mem. op.) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993)).

"A movant for traditional summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *Douglas*, 600 S.W.3d at 365 (citing TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985)). Under a traditional motion for summary judgment, "[a] defendant-movant who conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim." *Id.* (citing *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010)). Also, "after an adequate time for discovery, a party may file a no evidence motion for summary judgment on the ground that there is no evidence of one or more

5

essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *Id.* (citing TEX. R. APP. P. 166a(i)).

In a case like this, where "a party has moved for summary judgment on both traditional and no evidence grounds, we typically first review the propriety of the summary judgment under the no evidence standard." *Healey v. Healey*, 529 S.W.3d 124, 129 (Tex. App.—Tyler 2017, pet. denied) (citing TEX. R. CIV. P. 166a(i); *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). "A no evidence summary judgment motion under Rule 166a(i) is essentially a motion for a pretrial directed verdict, and it requires the nonmoving party to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *Douglas*, 600 S.W.3d at 365 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006)). "[A] no evidence challenge will be sustained when there is a complete absence of evidence of a vital fact or the evidence offered to prove a vital fact is no more than a mere scintilla." *Healy*, 529 S.W.3d at 129 (citing *Merriman*, 407 S.W.3d at 248). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair minded jurors to differ in their conclusions." *Id.* (citing *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003)).

In our analysis, "we review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence

unless reasonable jurors could not." *Douglas*, 600 S.W.3d at 365 (citing *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009)).

### III.    The Summary Judgment Evidence

Jackson testified that he had first tried to sell the Property in 2012 or 2013. Because "nothing really happen[ed] with it," Jackson decided to enlist Diamond D Realty "so they could show" the Property after his neighbor said he had enlisted that company to sell his property. As a result, Jackson entered into a standard Texas Association of Realtors Farm and Ranch Real Estate Listing Agreement (Agreement) to sell "100 of the acres" of the Property. The Agreement, signed by Griffith on behalf of Diamond D Realty, stated that the listing period would begin on March 23, 2015, and would terminate the following year.[2] By signing the Agreement, Jackson agreed to pay Diamond D Realty a six-percent commission upon sale.

Appellees attached the Agreement to their summary judgment motion. Their other summary judgment evidence, detailed further below, included Jackson's deposition and showed that (1) Jackson gave permission to hunt and fish on his property, (2) Jackson had no personal knowledge of many of the acts he complained of in his petition, (3) the sale was not delayed by Appellees, and (4) the remaining acts could not form a basis for Jackson's causes of action.

We first examine Jackson's deposition. Jackson's first two complaints were that Appellees used the Property to hunt, fish, and shoot firearms, but his deposition testimony established that Griffith asked for permission to hunt, fish, and shoot and that Jackson told Griffith that he "didn't care" if he used the Property in that manner. Jackson's third and fourth

---

[2]It also provided that a third party owned twenty-five percent of the mineral interests in the Property and that Jackson would retain the remaining seventy-five percent.

7

complaints said that the Property was used to go four wheeling, which disturbed cattle on the Property, but his deposition showed that he did not see Appellees four wheeling on the Property. Jackson's fifth complaint alleged that Appellees showed the Property to buyers who were not creditworthy, but Jackson admitted that he did not know the names of non-creditworthy parties and had not checked their credit or bank statements. Jackson also alleged that Appellees left six acres off the Property listing, but both the Agreement and listing showed that a 100-acre tract of the Property was for sale.

Jackson also alleged that Appellees "[t]ook over negotiations with the potential buyer of another realtor who had the right to sell the property." Jackson's deposition showed that his half-sister, Heidi Bridwell, who was also a realtor, received the first offer on the property on July 4, 2015, from Dustin Breyman, but Jackson rejected the offer. Jackson testified that Griffith "kind of took over from Heidi, started negotiations, . . . showed the [P]roperty and had actual contact with [Breyman]." In addition to the Property, Breyman wanted to buy property from Jackson's neighbor, Phil Bailey, who had also listed his property with Diamond D Realty. Jackson testified that he was aggravated at Griffith, was "tired of messing with him," and, as a result, concocted the following scheme:

> I decided to play along with [Griffith] and wait until the last minute to sign my contract with [Breyman]. Then I told [Bailey] to let me know when they closed and he had his money in the bank. He notified me that he had funds for his property . . . in the bank, and then I retracted my contract with [Breyman]. I did this to put [Griffith] in a tight spot.

Jackson had also instructed Bridwell to "play along" with the scheme. Eventually, Breyman did purchase Jackson's Property. As a result, the evidence showed that Griffith took over unsuccessful negotiations from Bridwell and successfully sold the Property.

The first contract for sale was signed by Breyman and presented to Jackson on September 14, 2015. Jackson testified that he refused to sign the contract because it included the sale of hunting blinds and game feeders, which was the basis of Jackson's eleventh bulleted complaint in his petition.[3] As for the second version, Jackson was unhappy that the earnest money was listed at $200.00, forming his twelfth bulleted complaint.[4] The third version included gates and corrals belonging to Jackson's lessee and prompted a disagreement with Badgley about Appellees' commission.[5] Jackson testified, "And that's where I got in a discussion with Denise Badgley telling me I'm going to pay her her commission, and I said, no, Dustin Breyman is, so I added $25,000 to the selling price to pay each Realtor $12,500. And that's what made me mad with her." As a result, Jackson's last bulleted complaint alleged that Appellees refused to terminate the Agreement or give up a commission. At that point, Jackson decided to communicate solely with Bridwell, who prepared the fourth and final contract for sale, which Jackson signed on October 22, 2015. Bridwell agreed to share the commission with Appellees, and the final closing occurred on October 30.

---

[3]Jackson had agreed to sell hunting blinds in the Agreement.

[4]The Agreement contained no provision requiring more earnest money.

[5]The Agreement specified that the sale of the Property would include "**permanently installed and built-in items**" like "fences, gates, . . . and corrals."

9

Jackson's petition sought damages as a result of Appellees' alleged delay in closing the sale. When asked what created the delay, Jackson responded that the delay was caused by revisions to the contracts for sale. When asked if anything else delayed the closing, Jackson said, "I can't remember that." Jackson's deposition also established that the delay Jackson was blaming on Appellees occurred from September 14 to October 22, 2015. Jackson explained his belief that Griffith should have had the final version of the contract to prevent the delay. Even though his mortgage was $918.00 per month, Jackson wanted to be reimbursed $60,000.00 for moving costs and his personal delay in moving because the ground "started getting wet and [his] truck went down on [him]."

Jackson's deposition also nullified several other bulleted complaints. Although he complained that Appellees refused to mention squatters' rights in the contract, he stated in his deposition that he did not "know what that [was] about." Jackson alleged that someone had entered the Property after a "no trespassing" sign was posted but admitted that he had no knowledge of Appellees coming onto the Property after the sign was placed. He admitted that none of his personal property was removed by Appellees. Although Jackson accused Appellees of not including interest in the contract for owner financing, the sale to Breyman showed that he paid $200,000.00 in cash and entered into a separate Seller Financing Addendum with Jackson providing for six-percent interest per annum. Jackson complained that he was required to pay for a new survey, but the final contract for sale required no new survey.

Citing to Jackson's deposition, Appellees argued that his testimony established that Jackson had no evidence to support most of his bulleted complaints. They also argued that

Jackson's remaining complaints provided no evidence of his breach of contract and fraud causes of action. Those remaining complaints included that Appellees (1) did not mention the sewer line on the property, (2) did not use Jackson's survey when originally listing the property, (3) did not return Jackson's survey, (4) did not disclose that Breyman's purchase offer was contingent on the sale of a neighboring property,[6] (5) did not include in the sales contract that Jackson's lessee had thirty days to remove his cattle and other belongings, (6) refused to include a clause in the contract clarifying that Jackson's deadline to remove his personal property was contingent on weather permitting, and (7) asked for Jackson to pay for mineral rights research.

In response to the motion for summary judgment, Jackson simply restated his bulleted complaints from his petition. In spite of his deposition testimony, Jackson signed an unsworn declaration stating that he had personal knowledge of each of the bulleted complaints. Jackson's affidavit complained that he was "induced into signing the listing agreement under representations that [Appellees] would make conventional efforts to sell the property." Jackson said that Appellees' unconventional acts and omissions delayed the sale and required him to make additional mortgage payments and incur other expenses.

Because much of Jackson's declaration contradicted his sworn deposition testimony, Appellees argued that the declaration was a sham and that it should be disregarded under the sham affidavit rule. The trial court granted Appellees' summary judgment motion.

---

[6]Nothing in the evidence showed that the sale of the Property was contingent on the sale of the neighbors' property. In fact, the evidence showed that the sale of Bailey's property closed before the sale of the Property.

## IV.    Analysis

Raising a threshold issue, Appellees argue that Jackson's unsworn declaration could not be considered for any purpose because it was improper form.  "In general, 'an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute. . . .'"  *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 291 (Tex. App.—Tyler Aug. 30, 2021, pet. denied) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(a)).  "Such a declaration must be in writing and must be subscribed as true under penalty of perjury."  *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(c)).  "The statute requires a jurat to appear in 'substantially' the same form as the template jurat before an unsworn declaration becomes operative."  *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(d)).  The jurat must include the declarant's name, date of birth, and address; a statement that "under penalty of perjury that the foregoing is true and correct"; the county, state, and date of execution; and the declarant's signature.  TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(d).

Jackson's declaration includes his name, date of birth, and address and the county, state, and date of execution.  It also states, "I declare under penalty of perjury that the facts stated in this document are true and correct."  Even so, without further specification, Appellees argue that Jackson's declaration fails to contain a proper jurat.  On our review, we find no fatal omissions in Jackson's declaration.  *See Project Rose*, 633 S.W.3d at 291 (quoting *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 813 (Tex. App.—El Paso 2014, no pet.) ("Although the declaration jurat fails to contain [the declarant's] address and date of birth, such an omission is not fatal . . . .").  The Tyler Court of Appeals has written that "the 'key to an unsworn declaration' is that it must

12

be signed under penalty of perjury." *Id.* (quoting *Gillis v. Harris Cnty.*, 554 S.W.3d 188, 193 (Tex. App.—Houston [14th Dist.] 2018, no pet.)). Because Jackson's declaration established that it was signed under penalty of perjury, we apply the precedent of the Tyler Court and will consider it as summary judgment evidence.

Even so, we will not consider the portions of Jackson's declaration that violate the sham affidavit rule. Under this rule, "if a party submits an affidavit that conflicts with the affiant's prior sworn testimony and does not provide a sufficient explanation for the conflict, a trial court may disregard the affidavit when deciding whether the party has raised a genuine fact issue to avoid summary judgment." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 82 (Tex. 2018). "The basis for the rule is that allowing manufactured affidavits to defeat summary judgment would thwart the very object of summary judgment, which 'is to separate real and genuine issues from those that are formal or pretended . . . .'" *Id.* at 85 (quoting *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975)). "Rewarding a party who seeks to defeat summary judgment by 'contradicting his own prior testimony . . . would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Id.* (quoting *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). Jackson's declaration was submitted "in lieu of a written . . . affidavit required by statute or required by a rule." TEX. CIV. PRAC. & REM. CODE ANN. § 132.001. Many of the statements made in the declaration contradicted

Jackson's sworn testimony without explanation. As a result, we will not consider those portions of Jackson's declaration as summary judgment evidence.[7]

We also note that Jackson's declaration and his appellate brief contained restatements of his petition and argument. Because Jackson's pleadings and arguments are not evidence, we will not consider them as competent summary judgment evidence. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) ("Generally, pleadings are not competent evidence, even if sworn or verified."); *Clayton v. Wisener*, 169 S.W.3d 682, 684 (Tex. App.—Tyler 2005, no pet.) ("Motions and arguments of counsel are not evidence.").

Next, nothing in Jackson's declaration, including the "laundry list" of bulleted complaints that we can consider, showed that Appellees breached any portion of the Agreement. Instead, Jackson said that the "laundry list" of complaints was not "contracted for and constitute[d] a course of behavior that significantly breached the listing agreement." In other words, Jackson accuses Appellees of breaching the Agreement without providing any proof of a breach of any portion of the Agreement. As a result, his statement that Appellees' extracontractual course of conduct constituted a breach is conclusory and disregarded because "[c]onclusory statements are not proper summary judgment proof." *Zerga Phin-Ker, LP v. Hartford Fire Ins. Co.*, No. 12-20-00074-CV, 2021 WL 1418397, at *3 (Tex. App.—Tyler Apr. 14, 2021, no pet.) (mem. op.); *see*

---

[7]Specifically, we find that the following statements in the declaration were contradicted by Jackson's deposition testimony: (1) that Jackson did not know that Griffith would make personal use of the property to hunt, fish, and shoot firearms, (2) that Jackson had personal knowledge that Appellees went four wheeling or disturbed cattle on the property, (3) that Jackson had personal knowledge that Appellees showed the Property to buyers who were not creditworthy, (4) that Appellees left acreage off of the listing, (5) that Appellees did not "put interest in the contract for owner financing," (6) that Appellees "[p]laced in the contract that Plaintiff would pay for a new survey," (7) that Appellees "[r]efused to mention squatters' rights in the contract," and (8) that Appellees trespassed on the Property after a "no trespassing" sign was placed on it.

14

*Haley v. Thirkill*, No. 12-20-00109-CV, 2021 WL 1046500, at *3 (Tex. App.—Tyler Mar. 18, 2021, no pet.) (mem. op.) ("Bare conclusions are incompetent."). Simply put, Jackson introduced no competent evidence to support his breach of contract claim.

Next, in addition to misrepresentation of a material fact, "[f]raud claims require scienter." *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 659 (Tex. App.—Texarkana 2013, no pet.) (quoting *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 692 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). Jackson testified that he "found Diamond D" after speaking with Bailey. He argues that Appellees represented that they would make conventional efforts to sell the Property. In his declaration, Jackson said that Appellees "committed unconventional acts and omissions," but his opinion is conclusory and unsupported by competent evidence. In other words, Jackson's declaration and attached documentation do not provide more than a scintilla of probative evidence showing that Appellees failed to make conventional efforts to sell the Property, which was sold six months after the Agreement. Further, there is no evidence showing any scienter on Appellees' part.

After reviewing Jackson's declaration and attachments, we find the trial court properly granted Appellees' no-evidence summary judgment motion because there was no more than a scintilla of evidence to create a genuine issue of material fact on Jackson's breach of contract and fraud claims.[8] Accordingly, we overrule Jackson's point of error.

---

[8]If a no-evidence summary judgment was properly granted, we do not reach arguments regarding the traditional motion for summary judgment. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

## V.      Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:      July 20, 2023
Date Decided:        August 17, 2023